## HENDRICK v. EMPLOYERS' LIABILITY ASSUR. CORP.

(Circuit Court, E. D. Missouri, N. D. June 2, 1894.)

ACCIDENT INSURANCE—PASSENGER IN PUBLIC CONVEYANCE.

One insured by an accident policy "as a passenger in a public conveyance provided by a common carrier," after he had alighted from a railroad train, at a station from which he intended to continue his journey by a later train, attempted to speak to the engineer about a matter having no connection with the continuance of his journey, or his condition as a passenger, and, while crossing the platform of a car, fell therefrom, and was injured. *Held*, that he could not recover on the policy for his injuries.

This was an action by James M. Hendrick against the Employers' Liability Assurance Corporation on an insurance policy.

This was an action brought upon a policy of accident insurance issued September 21, 1893, the material portion of which is as follows: "For and in consideration of a premium of $1.00, this policy hereby insures James M. Hendrick, of Louisiana, Missouri, for the under-mentioned benefits, and always subject to the conditions on the back thereof (which are made a part of this contract), from one o'clock a. m. on September 21, 1893, as a passenger in a public conveyance provided by a common carrier within the limits of the United States or dominion of Canada, and also insures within the limits of the city of Chicago, Illinois, during the progress of the World's Fair. This insurance shall cease when the insured shall have returned to his residence, but shall in no event extend beyond a period of seven days (expiring at one o'clock a. m.) from date of register above. Benefits: $3,000 at death, or for the loss or actual separation of two entire feet, or two entire hands, or one entire foot and one entire hand, or of the complete and irretrievable loss of the sight of both eyes; $1,500 for loss, by actual separation, of one entire hand or one entire foot."

The facts in the case were undisputed, and were as follows: The plaintiff purchased the two accident policies on September 21, 1893, at that time residing in Bowling Green, Mo. On September 23, 1893, he started from Bowling Green, Mo., intending to go to Chicago, for the purpose of attending the World's Fair. He had passes over the Chicago & Alton Railroad from Louisiana, Mo., to Chicago, and had left them at the hotel at Louisiana, Mo. He started from Bowling Green late on the night of September 23d, and arrived at Louisiana,

Mo., about 2 o'clock on the morning of the 24th. The plaintiff paid his fare from Bowling Green to Louisiana. When the train reached Louisiana, the plaintiff got off the train, for the purpose of going to his hotel and getting his passes, and continuing his journey to Chicago at 3 o'clock in the afternoon of the same day. After alighting upon the platform, the plaintiff, who had just resigned his position as locomotive fireman for the Chicago & Alton Railroad Company, started forward, towards the head end of the train, for the purpose of seeing the engineer, and advising him that he had left the service of the railroad company, and that some other person—a mutual friend—could now apply for the position made vacant by his resignation. The track upon which the train was standing ran east and west, the engine being to the east. The plaintiff had gotten off on the north or left-hand side of the train, and, as he started forward towards the engine, he was prevented from reaching the engine upon that side of the train by a large truck load of baggage, which stood in his way, and prevented him from getting by. He thereupon crossed over to the south or right-hand side of the train, passing over the platform of the smoking car. Plaintiff then started forward, towards the engine, but, when within a few feet of the tender, the bell upon the engine began to ring, indicating that the train was about to start. Seeing that he would be unable to have a conference with the engineer before the train should start, he retraced his steps to the west end of the baggage car, and there started to cross over the platform of that car. After he had gotten upon the steps of the platform, he stumbled upon a large box which was lying upon the platform of the baggage car, and fell backwards. In falling, his foot became entangled in a rope attached to the box, and he was dragged quite a distance, and the wheels of the train passed over his left arm, necessitating its amputation.

Fagg & Ball and Geo. A. Mahan, for plaintiff.
Lathrop, Morrow, Fox & Moore, for defendant.

WILLIAMS, District Judge (charging the jury). It is a question, under this complaint and the testimony, as to whether the court shall instruct the jury peremptorily to find for the plaintiff or for the defendant.

The rights of the plaintiff under an accident policy of this kind should be liberally construed in favor of his recovery. That is the settled policy of the law, where he has purchased an accident policy, and relied upon it, that, if he is injured, and seeks redress at the hands of the court, as against the issuers of the accident ticket or policy, it should be liberally construed in favor of his recovery. The testimony in this case is simply the testimony offered by the plaintiff himself. The policy undertakes to pay him a certain amount in case of an accident he receives as a passenger upon any railroad or other public carrier. It says "vehicles," but upon the line of any public carrier. The testimony of the plaintiff himself shows that he got on a train at Bowling Green, and paid his fare to the city of Louisiana; that he got off at Louisiana, for the purpose of going to his boarding place and stopping there until 3 o'clock the next day, and take that train for the city of Chicago. He says there was no other train that he could take until 3 o'clock the next day. That was his intention. He arrived in Louisiana during the night some time. Now, if he had been injured while doing anything incident to his journey from Bowling Green to Chicago, the court would instruct the jury to find a verdict in favor of plaintiff. I will go further, and say that, if he was injured after getting off from the cars at Louisiana, and going up to his boarding place

to get his transportation, I would hold that to be a continuance of his journey; that is, that the accident was received while doing something to continue his journey as a passenger. That, however, would be an extreme view of it in favor of the plaintiff. But the testimony here shows that he had gotten off the train safely, without harm to himself, and that this injury was received while doing something in no manner connected with his journey to Chicago, or in any manner connected with the condition of a passenger. He himself says that he got off the train, and that it was his intention to stay there until 3 o'clock the next day, and that he went down the platform on the north side to interview the fireman or engineer about something entirely disconnected with the relation of a passenger,—to tell them that he had quit the road, that they might notify some friend of his that he might apply for his situation. It had nothing to do at all with the continuance of his journey, or with his position as a passenger. While doing this he did a very dangerous thing,—in the nighttime, passed over the platform of the train, and got upon the other side, and heard the bell ring, giving the signal to start. Now, he said he could not see the engineer, and he got on the platform again to cross over; train liable to start at any moment. But even if he had done that while pursuing the idea of being a passenger, and in the relation of a passenger to the common carrier, I think the ticket would provide even for that kind of an accident. But this company had a right to limit their liability to the relation of a passenger upon a common carrier. The view of the court is that he had clearly ceased to be a passenger when this injury occurred. He had got to the end of his journey. By the very charge of Judge Drummond, in the case cited by plaintiff, it is unquestionable. if Judge Drummond had found the testimony, as in this case, clearly showing that that man had arrived at the end of the journey, the charge would have been to find for the defendant; but he said: "It is not clear, and it is for the jury to say, whether he had arrived at the end of his journey or not." "If you find he had not arrived at the end of his journey," he says, "then the liability continues." "He had a right to get off." A man is not obliged to stay upon the cars at every station. He may want to get off, for various reasons incident to his passengership, but, after arriving at the end of his journey, and getting off upon the platform. if he is injured in the doing of something that is not at all incident to his journey, then the liability ceases. The testimony is unquestioned that this injury was received after he arrived at the end of his journey at Louisiana, and while doing something that was not at all connected with the idea of his being a passenger upon any common carrier. He says himself that he was doing something else.

The instruction of the court to the jury is that the defendant is entitled to a verdict upon this testimony, and it is so ordered.